| | |
|---|---|
| CNH INDUSTRIAL CAPITAL AMERICA, LLC f/k/a CNH CAPITAL AMERICA, LLC, <br><br>  Plaintiff, <br><br> v. <br><br> ABLE CONTRACTING, INC. and CHANDLER M. LLOYD, <br><br> Defendants. | Civil Action No. 9:16-cv-2520 <br><br> **ORDER AND OPINION** |

This matter is before the Court on Plaintiff CNH Capital Industrial America, LLC's f/k/a CNH Capital America, LLC ("CNH"), motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure and for summary judgment under Rule 56. (Dkt. Nos. 57, 58.) For the reasons set forth below, the motion for judgment on the pleadings is granted and the motion for summary judgment is granted as to liability only.

I.  **Background and Relevant Facts**

Plaintiff CNH is a Delaware limited liability company with its principal place of business in Wisconsin. Defendant Able Contracting, Inc. ("Able") is a South Carolina corporation that does business in Ridgeland, South Carolina. Defendant Chandler Lloyd is the President of Able. Former third-party defendant G, J & L Inc. d/b/a/ Border Equipment ("Border") is a dealer in heavy machinery and equipment.

A.  **The Retail Installment Sales Contracts**

This dispute arises out of Border's sale to Able of several pieces of heavy construction machinery (including excavators, a wheel loader, and a tractor) in 2013 and 2014. Those sales were executed pursuant to three retail installment sales contracts ("RISCs"). The First RISC was

-1-

executed on or about October 25, 2013 for Able's purchase of a new Case Excavator. (Dkt. No. 1-1.) Defendant Lloyd, the President of Able, executed a Personal Guaranty with Border to guarantee payment under the First RISC. (Dkt. No. 1-1 at 5.) The Second RISC was executed on or about November 19, 2013 for Able's purchase of a Case Wheel Loader, a Case Excavator, a used John Deere tractor, and several attachments for larger pieces of equipment (for example, the bucket that attaches to the end of an excavator). (Dkt. No. 1-5.) The Third RISC was executed on or about September 28, 2014 for Able's purchase of a new Case Excavator. (Dkt. No. 1-9.)

With the exception of price and equipment covered, the RISCs contain the same general terms and grant Border and any contractual assignees a "first priority purchase money security interest" in the piece(s) of equipment covered by the contracts.

### B. Assignment to CNH

Each of the RISCs includes a provision assigning the contract to CNH. (Dkt. No. 1 at 3, 5, 8.) The RISCs specify that upon assignment "all rights and benefits but no obligations (if any) of Seller" are transferred to CNH; that Able "will not assert against Assignee any claim or defense which [Able] may have against Seller, the manufacturer of the equipment, or any other person"; and that the equipment is sold "as is and with all faults" and "seller and manufacturer make no other representation or warranty, express or implied, and specifically disclaim the implied warranties of merchantability and fitness for particular purposes." (Dkt. No. 1-1 at 3.)

### C. Alleged Default and Breach

The RISCs indicate that a default occurs when the "Buyer fails to pay when due any of the Obligations." (Dkt. No. 1-1 at 4.) Upon default, the seller or assignee can, among other things, "declare all obligations immediately due" and "sell . . . all Collateral at public or private sale." (Dkt. No. 1-1 at 4.) CNH alleges that Able defaulted when it failed to make required

-2-

payments under all three RISCs. (Dkt. No. 1 at 3, 6, 9.) Able does not dispute that it stopped making payments under the three RISCs shortly before restoring possession to CNH of all of the equipment except for the John Deere tractor covered by the November 19, 2014 RISC. (Dkt. No. 1 at 3, 6, 9; Dkt. No. 59 at 3.) Able claims it is not responsible for any additional payments because it revoked acceptance by returning the equipment to CNH.[1] (Dkt. No. 18 at 22.) CNH claims Abel's return of equipment was "voluntary repossession." (Dkt. No. 18 at 13)

CNH filed this lawsuit in July 2016 alleging that Able is in default under all three RISCs for failure to pay and that Lloyd had breached his Personal Guaranty by failing to pay the balance on the first RISC. (Dkt. No. 1.) CNH claims that Able must return the John Deere Tractor and owes $93,017.89 under the first RISC, $209,772.38 under the second RISC, and $178,590.48 under the third RISC. (Dkt. No. 1 at 3, 6, 9.) CNH also claims it is entitled to interest on the balance of the RISCs and attorney's fees and costs. CNH claims Defendant Lloyd is also responsible under the Personal Guaranty for the remaining balance on the first RISC of $93,017.89. CNH acknowledges that it had a duty to mitigate damages and claims it has taken steps to sell the repossessed equipment in private sales. (Dkt. No. 1 at 4, 6, 9).

CNH has moved for summary judgment based on Able's failure to comply with the terms of the RISCs and Lloyd's failure to perform under the Personal Guaranty. (Dkt. No. 58.) Able and Lloyd have asserted several counterclaims. (Dkt. No. 18.) CNH has moved for judgment on the pleadings on Defendants' counterclaims. (Dkt. No. 57.)

## II. Legal Standard

### A. Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is assessed by "applying the same

---

[1] Able has alleged that the equipment was defective and frequently broke down and that Border failed to provide agreed-upon repair services.

standard . . . as motions made pursuant to Rule 12(b)(6)." *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rule 12(b)(6) permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses. . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968))

### III. Discussion

#### A. Able and Lloyd's Defenses and Counter-Claims

Able and Lloyd have filed responses in opposition to CNH's motions for summary judgment and judgment on the pleadings. (Dkt. Nos. 62, 63.) They argue that CNH is not entitled

-5-

to summary judgment because (1) there is a genuine issue of material fact about whether Able seasonably revoked acceptance; (2) the warranties in the RISCs failed in their essential purpose; (3) Able was fraudulently induced to enter the RISCs; (4) Border was acting as CNH's agent; (5) the contractual terms waiving defenses and claims were unconscionable; and (6) CNH is not a holder in due course of the RISCs.

### 1. Holder in Due Course

CNH alleges it is a holder in due course of the RISCs and so is immune from all but a select few of Defendants' affirmative defenses and claims. (Dkt. No. 41 at 19.) A holder in due course is a holder that took the instrument: "(i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 36-3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 36-3-305(a)." S.C. Code § 36-3-302.

Defendants claim CNH is not a holder in due course because CNH had notice of an uncured default with respect to payment of another instrument issued as part of the same series. (Dkt. No. 62 at 9-10.) Specifically, Defendants argue that as there were outstanding late fees on the First RISC as of April 2014, and CNH had notice of that uncured default before it accepted assignment the Third RISC in September 2014. (Dkt. No. 62 at 10.) Defendants' argument relies on the assumption that the three RISCs form a "series." The three RISCs were executed months apart in three separate transactions for three different pieces of equipment; they do not form a series. *See, e.g.,* Frederick M. Hart and William F. Willier, Negotiable Instruments Under the Uniform Commercial Code § 11.05 (2017) (defining a series as, for example, "twelve

separate note[s issued] each payable in the amount of one-twelfth of the purchase price and due on twelve different dates"); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 452 F. Supp. 1108, 1111 (S.D.N.Y. 1978) (eight promissory notes based on a single loan agreement that matured at six-month intervals constituted a series of notes). Defendants have not asserted any other challenge to CNH's being a holder in due course of the RISCs, and the Court has not independently identified any. For these reasons, CNH holds the RISCs in due course and is immune from all but a select few of Defendants' defenses and claims.

### 2. Revocation of Acceptance

The right of a holder in due course to enforce obligations of an instrument is subject only to certain defenses under S.C. Code § 36-3-305(b), including "a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceeding." S.C. Code § 36-3-305(a)(1).

Able claims it revoked acceptance of the pieces of equipment when it returned them CNH. (Dkt. No. 18 at 22.) Defendants argue that although S.C. Code § 36-3-305(a)(1) does not specifically list revocation of acceptance as an allowable defense, it includes defenses based on "duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor."

Defendants' argument rests on the assumption that revocation of acceptance renders a contract illegal. However, revocation of acceptance simply voids a contract and gives the obligor "the same rights and duties with regard to the goods involved as if he had rejected them."

-7-

S.C. Code § 36-2-608(3). A contract might be illegal when, for example, bribery is involved, the Constitution is violated, or a statute is violated. *See, e.g., Berkebile v. Outen*, 426 S.E.2d 760, 763 n.2 (S.C. 1993); *Jackson v. Bi-Lo Stores, Inc.*, 437 S.E.2d 168, 171 (S.C. Ct. App. 1993); *White v. J.M. Brown Amusement Co.*, 601 S.E.2d 342, 345 (S.C. 2004). Because Defendants' alleged revocation of acceptance does not render the RISCs illegal, CNH's status as a holder in due course insulates it from this claim.

### 3. Breach of Express and Implied Warranties

Defendants also claim that Plaintiff breached express and implied warranties and that the warranties failed in their essential purpose. (Dkt. No. 62 at 3; Dkt. No. 18 at 14.) Again, as a holder in due course, CNH's right to enforce obligations of the RISCs is subject only to S.C. Code § 36-3-305(a)(1), which does not include warranty-related claims. The RISCs also expressly state that the Buyer (Able) "will not assert against Assignee any claim or defense which Buyer may have against Seller, the manufacturer of the Equipment, or any other person" and that the equipment is sold as-is with "no other representation or warranty, express or implied, and specifically disclaim the implied warranties of merchantability and fitness for particular purposes." (Dkt. No. 1-1 at 3.) Defendants argue that the waiver provisions in the RISCs are unconscionable and are thus unenforceable. (Dkt. No. 62 at 8.) The Court does not need to reach this issue because, as explained above, Defendants cannot bring a breach of warranty claim against CNH.

### 4. Fraudulent Inducement

Most of Defendants' remaining claims and defenses are based on their claim that Marty Ward, an employee of Border, fraudulently induced them to execute the RISCs. (Dkt. No. 18 at 15-16.) "In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake." Fed. R. Civ. P. 9(b). To prevail on a cause of action for fraud in South Carolina, a party must show: "(1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Moseley v. All Things Possible, Inc.*, 694 S.E.2d 43, 45 (S.C. Ct. App. 2011) (citing *Regions Bank v. Schmauch*, 582 S.E.2d 432, 444 (S.C. Ct. App. 2003)). In addition to these nine elements of fraud, to prevail on a cause of action for fraud in the inducement, a party must show: "(1) that the alleged fraudfeasor made a false representation relating to a present or preexisting fact; (2) that the alleged fraudfeasor intended to deceive him; and (3) that he had a right to rely on the representation made to him." *Id.* (citing *Darby v. Waterboggam of Myrtle Beach, Inc.*, 344 S.E.2d 153, 155 (S.C. Ct. App. 1986)) (finding contract for the sale of land was fraudulently induced when seller knew there was an easement, misrepresented that there was not an easement, and falsified a plat to induce the sale).

Defendants allege that Ward represented to Defendants that: (1) various pieces of equipment could operate in dusty environments and for eight to ten hours a day; (2) Border had spare parts and competent technicians that would be available to Defendants; (3) a Case Wheel Loader 621F had a differential lock; and (4) the equipment was covered by manufacturer's warranty and Able could finance the equipment through CASE. (Dkt. No. 47-1 at 2-3; Dkt. No. 18 at 2, 11-12.) Able alleges that these representations induced it to execute the RISCs, and that these representations were false because the equipment broke down, service calls were not timely returned, and there was not a differential lock on the Wheel Loader. (Dkt. No. 47-1 at 2.)

First, Defendants cannot base a fraud action on a Marty Ward's opinion about the future performance of equipment, for example, his statement that an excavator would operate fine in dusty environments for eight to ten hours per day. *Bishop Logging Co. v. John Deere Indus. Equip. Co.*, S.E.2d 183 (S.C. Ct. App. 1995) (Statements made by logging equipment seller concerning expected performance of fully mechanized swamp logging system were "opinions as to future performance" and, thus, could not be basis of fraud action or basis for claim of negligent misrepresentation.). Marty Ward's statement was an opinion about future performance, not a statement of fact that was "susceptible of exact knowledge when the statement [was] made." *Id.*

Second, Defendants' complaints about the delayed response to service calls and availability of spare parts also fail to establish a claim for fraud in the inducement because the allegedly false statements did not relate to a present or preexisting fact. *See Moseley.*, 694 S.E.2d at 45 (claim must allege a false representation about a present or preexisting fact). A claim for fraudulent inducement cannot be based on a representation about some future event. At most, these are broken promises.

Third, Mr. Ward's allegedly false representations about the presence of a differential lock on the Case Wheel Loader cannot support a claim for fraud in the inducement because the absence of the lock was discoverable by lifting the floor mat (Dkt. No. 47-1 at 2), and Defendants "cannot rely upon misstatement of facts, if the truth is easily within his reach." *King v. Oxford*, 318 S.E.2d 125 (S.C. 1984) (citing *Flowers v. Price*, 3 S.E.2d 38, 39 (S.C. 1939)) (holding that evidence was insufficient to establish fraud as the plaintiff could have easily accessed facts needed to make an accurate valuation of the business transaction). Further, that the absence of the differential lock was easily discoverable and Defendants used the Wheel

Loader for about two years before returning it to CNH suggests that the presence of the differential lock was not material to their decision to enter the contract.

Finally, Defendants have made conclusory allegations about Border's representations about the manufacturer's warranty and financing but failed to allege facts to show the falsity of these representations, the materiality of these representations, or that Mr. Ward had knowledge of the falsity of the representations. (Dkt. No. 18 at 11-12.) For all of these reasons, Defendants have failed to state a claim for fraud in the inducement.

### 5. Agency Relationship Between Border and CNH[2]

Able supports several of its claims and defenses by arguing that CNH is responsible for the actions of Border and its employees because Border was an Agent of CNH. Specifically, Defendants have alleged that Marty Ward, an employee of Border, misrepresented various facts that induced Border to execute the RISCs (fraudulent inducement and breach of contract with fraudulent intent claims) and that he made express or implied warranties to Defendants that were subsequently breached by Border and, by extension, CNH. (Dkt. No. 18 at 8-9, 13-15.) For the reasons already discussed above, these claims and defenses fail on independent grounds. Able seems to argue that CNH is not immune from claims and defenses as a holder in due course if Border was acting as its agent.[3] The Court noes not reach this argument because, as set forth

---

[2] This Court issued a previous order asking the parties to submit supplementary pleadings about the alleged agency relationship between CNH and Border. The Court has reviewed each party's supplemental pleadings. (Dkt. Nos. 72, 73.)

[3] Earlier in this litigation, Able filed a third-party complaint against Border alleging ten different causes of action that generally mirrored the claims at issue in the instant motion. The Court dismissed Able's claims against Border for improper impleader. Defendants' allegation that there is an agency relationship between CNH and Border is an effort to revive their claims against Border by imputing the actions of a single Border employee, Marty Ward, to CNH based on the theory that Border is an agent of CNH.

-11-

below, Defendants have failed to sufficiently allege an agency relationship between CNH and Border.

### i. Actual Authority

Defendants initially argued only that Border was an agent of CNH because CNH had the "right and ability to control Border via Retail Finance Agreements, Program Procedures, Dealer Handbooks, Retail Installment Sales Contracts, and other indicia of control." (Dkt. No. 18 at 11.) In their supplemental pleading, Defendants argue that Border was an agent of CNH because (1) Border acted as CNH's debt collector; (2) Border engaged in contract negotiation, explanation, and modification on behalf of CNH; (3) Border undertook repair work on the equipment in question "with the assistance of CNH"; and (4) CNH had the right to control Border through their Retail Financing Agreement. (Dkt. No. 73 at 3-6.)

"A party asserting agency as a basis of liability must prove the existence of the agency." *Rosemond v. Campbell*, 343 S.E.2d 641, 644 (S.C. Ct. App. 1986). The standard for determining actual agency is "whether the purported master has the right or power to direct and control the servant in the performance of his work and in the manner in which the work is to be done." Jamison v. Morris, 684 S.E.2d 168, 171 (S.C. 2009) (quoting Watkins v. Mobil Oil Corp., 352 S.E.2d 284, 286 (S.C. Ct. App. 1986)). "Agency is a question of fact . . . [and] may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case." *Gathers v. Harris Teeter Supermarket, Inc.*, 317 S.E.2d 748, 752 (S.C. Ct. App. 1984).

Defendants' allegations[4] establish only that CNH and Border are separate entities who have a contractual arrangement through which CNH provides financing for equipment that Border sells. To the extent that CNH "controls" any of Border's activities by, for example, requiring Border to make debt collection calls in a certain manner, that control is contractually limited to issues connected to the financing arrangements. Defendants have not made allegations that create a genuine dispute of material fact about whether Border was a general agent of CNH such that CNH should be held responsible for representations that a Border employee made about the equipment.

### ii. Apparent Authority

Able argues that Border had apparent authority to act as Agent for CNH even if it did not have actual authority. (Dkt. No. 73 at 9-10.) To establish apparent authority, three elements must be met: (1) the "purported principal [must] consciously or impliedly represent[] another to be his agent"; (2) there must be "reliance upon the representation"; and (3) there must be a "change of position to the relying party's detriment." *Froneberger v. Smith*, 748 S.E.2d 625, 630 (S.C. Ct. App. 2013) (citing *Graves v. Servin Farms, Inc.*, 409 S.E.2d 769, 771 (S.C. 1991)). The focus is "on the principal's manifestation to a third party that the agent has certain authority." *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 296 (S.C. 1996).

Defendants' apparent authority argument fails because it relies solely on the representations made by Border and its employees and statements made by the alleged agent alone cannot establish that an agent had apparent authority. *See Frasier v. Palmetto Homes of*

---

[4] Some of Defendants' allegations mischaracterize the evidence. For example, Defendants' claim that CNH "assisted" Border with repair work is not supported by the evidence provided to the Court. (Dkt. No. 73 at 6.) The communications Defendants rely on show only that when CNH was making a collection call the client complained about some equipment breaking down. This is not evidence that Border was an agent of CNH.

*Florence, Inc.*, 473 S.E.2d 865, 868 (S.C. Ct. App. 1996) ("Moreover, an agency may not be established solely by the declarations and conduct of an alleged agent."); *Town of Kingstree v. Chapman*, 747 S.E.2d 494 (S.C. Ct. App. 2013) ("Apparent authority must be established based upon manifestations by the principal, not the agent.")

### 6. South Carolina Unfair Trade Practices Act

Defendants allege that Border made various misrepresentations while acting as an agent of CNH and that these misrepresentations constituted unfair or deceptive trade practices in violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). (Dkt. No. 18 at 17.) However, Defendants again fail to allege that CNH made misrepresentations, instead focusing only on the representations made by Border employee Marty Ward. As explained above, the Court finds that Defendants' have insufficiently pled their agency theory. Defendants' SCUPTA claim against CNH fails because they have made no allegations of unfair trade practices by CNH directly.

## IV. Plaintiff's Breach of Contract Claims

For the reasons discussed above, Defendants' defenses and counterclaims fail. The Court now turns to Plaintiff's claims. There is no dispute that Border and Defendants entered into three RISCs which were assigned to CNH. Plaintiffs claim, and Defendants do not dispute, that Defendants did not make payments pursuant to the agreed payment schedule. (Dkt. No. 1 at 2-9.) As failure to pay is defined as a default in the RISCs (Dkt. No. 1-1 at 4), Plaintiff is entitled to summary judgment on these claims. Plaintiff also claims it is entitled to possession of the John Deere Tractor described in the Second RISC executed on November 19, 2013. (Dkt. No. 1 at 7; Dkt. No. 1-5 at 5.) Because the RISC granted Border and assignees a "first priority purchase

money security interest" in the pieces of equipment, Plaintiff is entitled to summary judgment on this claim.[5] Finally, Plaintiff claims that Lloyd breached the Personal Guaranty. (Dkt. No. 1 at 9-10.) The personal guaranty stated that Lloyd "unconditionally and irrevocably guarantee[d] the payment, performance and complete fulfillment of all Obligations" under the first RISC, dated October 25, 2013. (Dkt. No. 1-12 at 2.) For the same reasons discussed above, Plaintiff is entitled to summary judgment on this claim.

## V. Relief

In addition to return of the John Deere Tractor, CNH claims that Able owes it $93,017.89 under the First RISC, $209,772.38 under the Second RISC, and $178,590.48 under the Third RISC.[6] (Dkt. No. 1 at 3, 6, 9.) CNH claims that under the Personal Guaranty, Defendant Lloyd is responsible for the remaining balance on the First RISC of $93,017.89. CNH also claims it is entitled to interest on the balance of the RISCs and attorney's fees and costs. The Court cannot determine the actual amount Able or Lloyd owes CNH under any contract because CNH has had the continuing obligation to mitigate damages.

## VI. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 57) is granted, and Plaintiff's motion for summary judgment is granted as to liability only (Dkt. No. 58). The amount of damages is reserved for trial.

---

[5] In its motions for summary judgement and for judgment on the pleadings, CNH asked the Court to take judicial notice of UCC Financing Statements (Dkt. No. 57-1 at 23-27; Dkt. No. 58-1 at 23-27) which it says show that the John Deere tractor listed in the second RISC was owned by Able as early as 2008. The serial number listed on the RISC for the John Deere tractor is T0410JX145813, while the John Deere equipment on the UCC Financing Statement is described as a Wheel Loader Backhoe with serial number 145572. With this limited information, the Court cannot take judicial notice of any irrefutable fact with regard to the relationship between these two apparently separate pieces of equipment.

[6] These figures are from the 2016 complaint.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

September 18, 2017
Charleston, South Carolina